IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KRISTY CLEA HOLDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:14-cv-369-CSC |
| ) | (WO) |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

On March 30, 2011, Kristy Clea Holder filed a Title XVI application for supplemental security income, alleging disability beginning March 30, 2011. (R. 17, 37).  The claim was denied initially on May 11, 2011. On June 29, 2011, Holder filed a written request for hearing before an administrative law judge ("ALJ").  Following a hearing held on October 9, 2012, ALJ Carl B. Watson issued a decision denying the claim on October 25, 2012.  (R. 17, 29).  The Appeals Council denied Holder's subsequent request for review (R. 1-6). The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

United States Magistrate Judge. (Doc. 8; Doc. 9). Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the claimant presently unemployed?
> (2)  Is the claimant's impairment severe?
> (3)  Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the claimant unable to perform his or her former occupation?
> (5)  Is the claimant unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen,* 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. *See Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990). Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Sullivan*,

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Holder was thirty-one on the date of the hearing before the ALJ. (R. 38). Her birthday is February 9, 1981. (R. 38). She has a high school education. (R. 38). Her past work was as a nursing assistant in an assisted living facility. (R. 39-40, 53). Holder alleges that she is disabled due to low back pain, obesity, anxiety, depression, migraine headaches, neck pain, right shoulder tendonitis, and low vision. (R. 19-20).

---

493 U.S. at 525 n.3; *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

**B.     The Findings of the ALJ**

The ALJ found that Holder has the following severe impairments: degenerative disc disease of the lumbar spine, obesity, anxiety and depression. (R. 19).  The ALJ also found nonsevere impairments of headaches, right shoulder tendonitis, and slight vision loss. (R. 19-20).  The ALJ found that Holder does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 20).  The ALJ found that Holder "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she cannot climb ladders, ropes, and scaffolds; she can occasionally climb ramps and stairs; she can occasionally stoop, kneel, crouch, and crawl; she must avoid working at unprotected heights; and she is limited to the performance of simple, routine, repetitive tasks in an environment where there is only occasionally interaction with the general public and where changes are infrequent and are introduced gradually." (R. 22).  The ALJ found that Holder could not perform her past relevant work, but that she could perform other jobs that exist in significant numbers in the national economy.  (R. 28).  Accordingly, the ALJ concluded that Holder was not disabled. (R. 29).

**C.     Issue.**

Holder presents the following issue for review:  Whether the ALJ committed an error of law by crediting the opinion of the Commissioner's nonexamining consulting physician and rejecting the  opinion of Holder's examining physician.

## IV. Discussion

**A.     Introduction**

A disability claimant bears the initial burden of demonstrating an inability to return to his past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11 th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, *e.g.*, the testimony of the claimant and his family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker*, 662 F.2d 731, 735–36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.

42 U.S.C. § 405(b)(1).

**B.     The ALJ did not commit an error of law by crediting the opinion of the Commissioner's nonexamining consulting physician, and substantial evidence supports the ALJ's decision.**

On May 9, 2011, as a nonexamining consultative physician for the Commissioner, Dr. Robert Estock, M.D., performed the psychiatric review technique (R. 256-68) at the initial

level of consideration. At that stage of review, Dr. Estock had the overall responsibility for assessing medical severity. 20 CFR § 416.920a(e)(1). Holder argues that, because Dr. Estock was a nonexamining consulting physician who did not have access to Holder's complete mental health records, including a March 8, 2012 psychological evaluation completed by Dr. Robert Storjohann, Ph.D., the ALJ erred as a matter of law by crediting the psychiatric review technique completed by Dr. Estock. (R. 256, 268). *See* 20 CFR § 416.927(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.").

Holder's argument in this regard is a non sequitur. The ALJ did not credit or rely on the opinion of Dr. Estock. At the administrative law judge hearing level, the ALJ must independently perform the psychiatric review technique and document the basis of that independent assessment in the opinion. 20 CFR § 416.920a(e)(4). In this case, the ALJ independently reviewed the record and set forth the evidence supporting his conclusions, which consisted of medical evidence and Holder's own testimony and statements about her impairments and daily activities, but did not include or even mention Dr. Estock's opinion.[4]

---

[4] The court notes not only that ALJ's independent psychiatric review technique contained no documented reference to Dr. Estock's assessment, but also that the ALJ's assessment is entirely different from Dr. Estock's. (R. 20-21, R. 256-68). For example, Dr. Estock did not consider Holder's impairment of depression at all; further, he found that Holder's anxiety was not a severe impairment because her anxiety caused only mild restriction in activities of daily living, no restriction in maintaining social functioning,

(R. 21-22).  In fact, the ALJ did not refer to or rely on Dr. Estock's opinion at *any* point in the sequential analysis, and, at every step in the sequential analysis, the ALJ's analysis is more favorable to Holder than Dr. Estock's analysis.

Accordingly, the court concludes that the ALJ applied the correct legal standard by independently performing the psychiatric review technique, documenting the evidence upon which he relied, and incorporating his pertinent findings and conclusions in his written opinion.  20 CFR § 416.920a(e)(4).  Further, the court has reviewed the entire record, including the evidence set forth in the ALJ's opinion, and court concludes that the ALJ's application of the psychiatric review technique is substantially supported by the evidence.

C.     **The ALJ did not commit an error of law by discrediting Holder's examining consulting physician and substantial evidence supports the ALJ's decision**.

On March 8, 2012, Holder's attorney referred her to Dr. Robert A. Storjohann, Ph.D., for a psychological evaluation.  (R. 290).  This was the only time Holder consulted Dr. Storjohann, and Holder served as the sole informant for the historical information contained in Dr. Storjohann's report.  (R. 290).  At the time of the consultation, Holder had stopped

---

maintaining persistence, concentration, or pace, and no episodes of decompensation. (R. 256, 266); *see* 20 C.F.R. §416.920a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities"). However, the ALJ found that "singly and in combination," Holder had severe impairments of anxiety *and* depression which caused moderate restriction in activities of daily living, moderate restriction in maintaining social functioning, maintaining persistence, concentration, or pace, and no episodes of decompensation. (R. 21). The ALJ then proceeded to consider whether those impairments met or equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1, and concluded that they did not. (R. 21-22); *see* 20 C.F.R. §416.920a(d)(1) ("If your mental impairment(s) is severe, we must then determine if it meets or is equivalent in severity to a listed mental disorder."). There is no basis for Holder's apparent assumption that the ALJ silently credited, relied upon, or adopted Dr. Estock's opinion.

taking her anxiety and depression medication because it caused her to be too drowsy to provide daily, around-the-clock care for her handicapped daughter. (R. 293). Prior to the consultation, beginning in December 2010, Holder's primary care physician had prescribed Buspirone for her depression and anxiety, and Holder had previously reported that the medication "helped tremendously" and "really helped" her to handle stress well. (R. 164, 176, 227-29, 226, 222-24). After Dr. Strojohann's examination, Holder began taking Busparin again and, although she sought medical treatment from her primary care physician for back pain, muscle spasm, joint pain, obesity, and allergies, she did not thereafter seek treatment for anxiety or depression. (R. 312, 323-25, 326-28, 335-36).

Dr. Storjohann administered the Beck Depression Inventory (BDI), on which Holder's score corresponded to moderate to severe depression, the Zung Depression Scale, on which Holder's score corresponded to severe to most extreme depression, and the Millon Clinical Multiaxial Inventory-III (MCMI-III). Based on the results of his evaluation and testing, Dr. Storjohann concluded that Holder had moderate deficits in her ability to understand, carry out, and remember instructions in a work setting and marked deficits in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting. (R. 296). Dr. Storjohann also completed a residual functional capacity questionnaire in which he opined that Holder had a marked limitation in the ability to respond appropriately to supervision and coworkers, marked limitation in ability to accept instructions and respond appropriately to criticism from supervisors, moderate to marked limitation in ability to work in coordination

8

with or proximity to others without being distracted by them, marked limitation in ability to respond appropriately to changes in the work setting, and marked impairment in the ability to maintain and sustain attention and concentration for extended periods (periods greater than two hours). (R. 57-59, 298-300). Dr. Storjohann also opined that Holder would likely miss work 15 to 20 days per month due to her disability. (R. 57-58, 300).

In this case, after considering the complete medical record and Holder's statements regarding her activities of daily living, the ALJ only partially credited Dr. Storjohann's opinion regarding Holder's residual functional capacity. Specifically, "in light of the claimant's history of depression and anxiety, the [ALJ gave] some weight to Dr. Storjohann's opinions in limiting the claimant to simple, routine and repetitive tasks in an environment where there is only occasional interaction with the general public and where changes are infrequent and gradually introduced." (R. 26). Then, based on the testimony of a vocational expert ("VE"), the ALJ found that Holder was not disabled because a person with her residual functional capacity could perform certain jobs that are available in significant numbers in the national economy. (R. 28-29).

However, in response to hypothetical questions at the administrative hearing in this case, the VE testified that there were no jobs available in the national economy for someone with Holder's functional limitations *if* those limitations also included the functional limitations reflected in Dr. Storjohann's opinion. (R. 56-59). Accordingly, if the ALJ had fully credited Dr. Storjohann's opinion, then the ALJ would have been required to find

9

Holder disabled. 20 C.F.R. § 416.966(b) ("If work that you can do does not exist in the national economy, we will determine that you are disabled."). Holder argues that the ALJ erred by failing to *fully* credit Dr. Storjohann's opinion and find her disabled.

Specifically, Holder argues that the ALJ erred in assessing her residual functional capacity by crediting the opinion[5] of Dr. Estock, who did not examine Holder and did not have access to pertinent later-developed medical records, while discrediting the residual functional capacity assessment of Dr. Storjohann, who did examine Holder and who had access to an additional year's worth of medical records. *See* 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). However, the ALJ's detailed explanation of the medical evidence and other evidence upon which he relied in determining Holder's residual functional capacity clearly shows that the ALJ partially credited Dr. Storjohann's findings and residual functional capacity assessment, but the ALJ did not rely at all on Dr. Estock's opinion in partially discrediting Dr. Storjohann or in formulating Holder's residual functional capacity. In fact, the ALJ did not rely on Dr. Estock's opinion at *any* point in his analysis. Accordingly, there is simply no basis for Holder's argument that the ALJ erred by accepting the opinion of a nonexamining physician (Dr. Estock) instead of an examining physician (Dr. Storjohann).

---

[5]Dr. Estock's opinion consisted of applying the psychological review technique required at steps two and three of the sequential analysis. *See* 20 CFR § 416.920a. Dr. Estock did not provide a residual functional capacity assessment.

Holder argues that the ALJ erred in rejecting Dr. Storjohann's opinion on grounds that the results of the tests administered by Dr. Storjohann are inconsistent with Dr. Storjohann's own objective observations of the claimant. The ALJ provided the following explanation for giving little controlling weight to Dr. Storjohann's report:

> Upon referral by her attorney, the claimant was examined by Robert A Storjohann, Ph.D. in March 2012. The claimant reported depressive and anxiety-related symptoms but stated she was not taking any psychotropic medications because they were overly sedating. While Dr. Storjohann noted the claimant exhibited anxiousness and depression, the remainder of her mental status examination was essentially normal. Specifically, he noted the claimant exhibited normal speech, full orientation, intact memory, logical and goal-directed thought processes, no hallucinations or delusions, grossly intact judgment and an average range of intelligence. Dr. Storjohann also noted the claimant's concentration/attention were intact, as the claimant was able to perform simple mathematical calculations, spell "world" forwards and backwards, recall 3/3 objects after a 5 minute delay, and recall 6 digits forward and 5 digits backwards. Although he noted that her scores on the Beck Depression Inventory (BDI) and Zung Depression Scale (Zung) fell within the moderate to extreme range of depression, the claimant's relatively normal mental status examination suggests that her depression does not impose significant functional limitations. Dr. Storjohann assigned the claimant a Global Assessment Functioning (GAF) score of 45, which represents serious impairment in social or occupational functioning. However, this relatively low GAF score appears to be based primarily on the claimant's subjective complaints and her low BDI and Zung scores, as it is not consistent with Dr. Storjohann's relatively normal findings upon mental status examination. Moreover, Dr. Storjohann examined the claimant on only one occasion upon request of the claimant's attorney, and his limited contact with the claimant renders his opinion regarding the claimant's overall functionality less persuasive. (Exhibit 6F). Accordingly, this GAF score has been given little weight.
>
> . . . .
>
> . . . Dr. Storjohann did not cite any significant objective abnormalities upon mental status examination to support his opinions. He only noted that the

>claimant exhibited some depression and anxiousness but otherwise noted the remainder of her mental status examination was normal. Dr. Storjohann also noted the claimant was cooperative, and he cited no objective findings to support his opinion regarding the claimant's social limitations, suggesting those opinions were based solely on the claimant's subjective reports and the claimant's BDI and ZDS scores. Additionally, as noted previously, Dr. Storjohann examined the claimant on only one occasion on request of the claimant's attorney. His limited contact with the claimant, as well as any potential prejudice stemming from the referral made by the claimant's attorney, renders his opinions regarding the claimant's overall functionality less persuasive. Moreover, the relatively sporadic and conservative treatment of the claimant's psychiatric symptoms since her amended alleged onset date suggests that her symptoms are not as limiting as Dr. Storjohann perceived. Nonetheless, in light of the claimant's history of depression and anxiety, the undersigned has given some weight to Dr. Storjohann's opinions in limiting the claimant to simple, routine and repetitive tasks in an environment where there is only occasional interaction with the general public and where changes are infrequent and gradually introduced. However, to the extent that he has opined the claimant is incapable of working on a regular and sustained basis, that opinion has been given little weight, as it is not supported by his objective mental status examination findings or the medical evidence of record. (Exhibit 6F).

(R. 26).

The court has reviewed the report and findings of Dr. Storjohann, and the ALJ correctly characterized the report. As the ALJ noted, other than Holder's subjective statements and test scores, Dr. Storjohann's report contains no objective findings that would support his residual functional capacity assessment, but it does contain objective observations (such as a relatively normal mental status examination that indicated no memory deficits) that are inconsistent with his residual functional capacity assessment. Further, the ALJ provided a detailed explanation showing that Dr. Storjohann's opinion is inconsistent with the medical record as a whole and with Holder's testimony regarding her activities of daily living. The

ALJ was entitled to discredit Dr. Storjohann's opinion on grounds that it was unsupported by his own objective observations and on grounds that it was inconsistent with the medical record and the record as a whole. *See* 20 C.F.R. § 416.927(d)(3)-(4).

Holder argues that the ALJ erred as a matter of law by "acting as both judge and psychologist" because, rather than relying on Dr. Storjohann's residual functional capacity assessment, the ALJ instead assessed Holder's residual functional capacity based on his own independent consideration medical record and the evidence as a whole. However, there is no merit to Holder's argument because the applicable legal standards actually *require* that the final responsibility for assessing residual functional capacity belongs to the ALJ. 20 C.F.R. § 416.927(d)(2). Although the ALJ to must "consider" a medical source statement regarding a claimant's residual functional capacity, opinions regarding a claimant's residual functional capacity are not medical opinions, but are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. § 416.927(d). Thus, the ALJ applied the proper legal standard by independently assessing Holder's residual functional capacity on the basis of all the evidence.

Accordingly, the ALJ applied the correct legal standards in assigning limited weight to Dr. Storjohann's residual functional capacity assessment. Further, the court has reviewed the record as a whole and finds that the evidence as a whole, and in particular the evidence cited by the ALJ in his detailed opinion, supports the ALJ's residual functional capacity

13

assessment.

## V. Conclusion

For the reasons as stated, the court concludes that the decision of the Commissioner should be affirmed. *See Landry v. Heckler*, 782 F.2d 1551, 1551-52 (11th Cir. 1986) ("Because the factual findings made by the [ALJ] . . . are supported by substantial evidence in the record and because these findings do not entitle [the claimant] to disability benefits under the appropriate legal standard, we affirm.").

The Court will enter a separate final judgment.

Done this 8th day of June, 2015.

                                    /s/Charles S. Coody
                                CHARLES S. COODY
                                UNITED STATES MAGISTRATE JUDGE